UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | Docket No.: CR-06-066 (RJL) |
| v. | : | |
| | : | |
| DOMINGO STEVENSON | : | |

**MEMORANDUM IN AID OF SENTENCING**

On August 25, 2006, Domingo Stevenson will come before this Court to be sentenced for the crime of possession with the intent to distribute marijuana, having entered a guilty plea to that offense on May 22, 2006. Counsel for Mr. Stevenson requests that the Court impose a sentence at the bottom of the applicable sentencing guideline range. Counsel suggests that the requested sentence is warranted based on the factors enumerated in 18 U.S.C. §3553, which include the nature and circumstances of the offense and the history and characteristics of the defendant. Mr. Stevenson is before the Court because he grew marijuana in his basement. The offense conduct, combined with Mr. Stevenson's personal characteristics and his conduct since the offense show that a sentence at the bottom of the applicable guideline range is appropriate.

      I.      **Mr. Stevenson's Personal Characteristics and Family Life**

Mr. Stevenson was born and raised in Washington, D.C. He was raised primarily by his maternal grandmother and a maternal aunt. Mr. Stevenson's mother was a young teenager when he was born and was not able to take an active role in raising him. His father had almost no involvement in his childhood. He attended Coolidge High School in the District of Columbia, but did not graduate. Mr. Stevenson obtained his GED in 1991 and has worked at a number of jobs since. Today, he works doing home improvement and household renovations. Because he has not been able to secure contracts on a consistent basis, his work has been unsteady.

Domingo Stevenson considers himself to be a father above all else. Mr. Stevenson has five children. He resides with his wife and their daughter, Kyra, and Mr. Stevenson's stepson, Khalif. Khalif's father is not involved in his life and Mr. Stevenson is raising Khalif as if he were his own son. Mr. Stevenson has four other children that live with their mothers but reside with Mr. Stevenson on the weekends and during the summer.

Mr. Stevenson is an active father and has a very close relationship with all of his children. Despite his conduct in this case, Mr. Stevenson, along with the mothers of his children, has created a very structured home environment for all of his kids. Mr. Stevenson attends P.T.A. meetings and actively monitors all of his children's educations. All of his children receive good grades and are well behaved. Mr. Stevenson also ensures that his children have full and active lives. He has taught all of his children how to swim, and all of his children participate in athletics that include ballet, football, and soccer. Mr. Stevenson attends all of their games and performances. He also coaches his twelve-year-old daughter's basketball team and his stepson's football team. The children all participate in summer camps every summer.

Mr. Stevenson has been married for five years to Nokomis Simkins, who works as a corporate travel agent in the District of Columbia. They have a happy marriage and take great pride in raising healthy children that do well in school. When Mr. Stevenson talks about the impact of his conduct in this case, he speaks almost exclusively about his family and the effect that his behavior has had, and will continue to have, on his wife and children. He describes trying to prepare his children for him to be away from the family while he serves a prison sentence. He struggles with the best way to explain the situation to the children and thinks about the burden that his departure will place on his wife while he is gone.

Shortly after Mr. Stevenson's arrest, Child and Family Services removed his children from the home and placed them in foster care. Child and Family Services acted solely on the basis of the facts of the instant criminal case. On the day that the children were removed, defense counsel received a frantic phone call from Mr. Stevenson and his wife. Both were in tears. During that call, Mr. Stevenson told undersigned counsel that he was prepared to accept full responsibility for his actions and do absolutely everything that was necessary to get his children back and resolve both his criminal and family cases. Today, Mr. Stevenson recalls that he "felt like he had lost everything" with his children gone. He describes watching his children being removed from the home as being the "worst feeling in the world." Since that day, Mr. Stevenson has completed parenting classes, stopped smoking marijuana, and complied with all court orders in the family case. His children have been returned to the home. Child and Family Services has indicated that it plans to dismiss the family court case in the next few months.

## II.   The Offense Conduct

Mr. Stevenson has been smoking marijuana daily since the age of 17. Over time, he became a very heavy user that, not only smoked marijuana, but also developed a fascination with the counter culture that surrounds the drug. Mr. Stevenson became interested in how marijuana is cultivated, the different types of marijuana that exist, and the characteristics of each type. He traveled several times to Amsterdam, where marijuana is lawfully sold and consumed, and Jamaica, where marijuana is openly grown and used. Eventually, Mr. Stevenson began growing marijuana in his basement sometime in late 2003 or early 2004 with seeds that he brought home from Amsterdam. Mr. Stevenson studied books, magazines, and videotapes to learn how to successfully cultivate plants that yielded usable marijuana. Mr. Stevenson's initial attempts to grow were unsuccessful. It took years, and a great deal of trial and error, for Mr. Stevenson to

produce the amount of harvestable marijuana that he was growing when he was arrested in this case.

Mr. Stevenson smoked most of the marijuana that he grew in his basement, either alone or with friends. The rest he sold to his friends and their acquaintances. Mr. Stevenson is no drug kingpin and did not get rich selling marijuana. He is a heavy marijuana user that developed a habit that he could only satisfy if he grew the drug himself. After years of heavy use, Mr. Stevenson grew to view marijuana use as acceptable. Since his arrest in this case, he has stopped smoking marijuana. Now sober, Mr. Stevenson recognizes that his fascination with marijuana and his conduct in this case was "dumber than dumb."

### III.     Mr. Stevenson's Conduct Since His Arrest

Since his arrest in this case, Mr. Stevenson has done everything possible to atone for his conduct and mitigate its impact on his family. First, Mr. Stevenson has complied with all court mandates in both the instant case and the family court case. As a result of his compliance, his children have been returned and the family court case will be dismissed in the next few months. Mr. Stevenson has also stopped smoking and growing marijuana. As a result of his sobriety, he has a clearer perspective on his conduct and sees exactly how bad his judgment became.

Mr. Stevenson entered a pre-indictment guilty plea in this case. Not only has he admitted to his conduct and accepted responsibility in court, he has also met with government counsel and two DEA agents and fully explained all of the details of his marijuana growing activities. Mr. Stevenson told the government exactly what he did and how he did it from the moment that he planted his first seeds all the way up until the day that he was arrested. Government counsel has told defense counsel that she believes Mr. Stevenson truthfully explained his offense conduct.[1]

---

[1] Though the government believes that Mr. Stevenson has truthfully debriefed about the offense conduct, they oppose him receiving safety valve treatment because they believe that he possessed two firearms in connection with

4

## IV.    Application of the 18 U.S.C. § 3553 Sentencing Factors

An application of the factors enumerated in 18 U.S.C. § 3553(a) supports Mr. Stevenson's request for a sentence at the bottom of the applicable guidelines range. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant and the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment for the offense. 18 U.S.C. §3553(a). The Court must also consider the need for the sentence to afford adequate deterrence, protect the public and provide the defendant with needed education, training or medical treatment in the most effective manner. Id. Finally, the Court must evaluate the type of sentences available and the applicable guidelines range while seeking to avoid unwarranted disparities and provide restitution to any victims.[2] Id.

The nature and circumstances of Mr. Stevenson's conduct call for a sentence at the bottom of the applicable guidelines range. Mr. Stevenson is before the Court because he grew marijuana in his basement. The parties agree that Mr. Stevenson smoked most of the marijuana that he grew and sold some to his friends and their friends. His conduct was largely confined to his home and did not result in harm to anyone, except ultimately, his own family. The parties agree that his conduct involved no violence or threats of violence. Furthermore, Mr. Stevenson has not become wealthy selling marijuana, as his primary motivation was always to produce marijuana that he could smoke for free. While he has violated the law and his conduct is serious, there is nothing about Mr. Stevenson's conduct that requires a sentence above the lowest suggested term of incarceration under the guidelines.

---

the offense. As discussed in section V of this memorandum, the government maintains this position even though they have no evidence linking Mr. Stevenson to either weapon, other than the fact that they were found in his house, and Mr. Stevenson has credibly explained why the guns were in his home.

[2] The applicable guidelines range is discussed in section V of this memorandum.

5

As noted above, Mr. Stevenson is a devoted husband and father. When the Court considers his history, it will note that aside from a traffic case, he has no prior criminal convictions. The attached letters of support demonstrate that he is a good person that has used terrible judgment. Counsel hopes that this submission along with the attached testimonials to his good character demonstrates to the Court that Mr. Stevenson has many good characteristics and that there is much more to him than the fact that he grew marijuana. See Attachment 1 (letters of support).

Even if the Court imposes the sentence requested by defense counsel, Mr. Stevenson will not get off easy. He will be incarcerated and separated from his family for a significant period of time. He has already gained a new respect for the law and has seen the seriousness and adverse effects of committing crimes. In sum, having already faced the prospect of losing his children and now having to confront the possibility of going to prison, Mr. Stevenson has been deterred. Counsel suggests that Mr. Stevenson is no danger to the public and that there is no need to incarcerate him for incapacitation purposes. Regarding treatment, Mr. Stevenson would benefit from drug treatment while incarcerated.

### V.     The Sentencing Guidelines Calculation

Mr. Stevenson's base offense level for possession with the intent to distribute marijuana is 18.[3] See U.S.S.G. §2(D)1.1(c)(11). Three points should be deducted for acceptance of responsibility, taking him to a level of 15. See U.S.S.G. § 3E1.1. Based on the number of plants that he possessed, Mr. Stevenson is statutorily subjected to a five-year mandatory minimum sentence. See U.S.C. 21 § 841 (b)(2)(b)(vii). However, the five-year mandatory minimum should not apply here because Mr. Stevenson is eligible for safety-valve treatment under section

---

[3] Mr. Stevenson possessed 200 marijuana plants. The sentencing guidelines require that each plant be treated as 100 grams of marijuana regardless of its actual size, weight or age. See U.S.S.G. § 2(D)1.1(c) note (E).

5C1.2 of the guidelines, which states that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" if the defendant meets five enumerated requirements. U.S.S.G. § 5C1.2(a).  Section 5C1.2(b) states that the final applicable base offense level in Mr. Stevenson's case shall not be less than 17.  With a base offense level of 17, Mr. Stevenson is exposed to a sentence of 24-30 months of incarceration.

    a.   The Two-Level Increase for Possession of a Weapon Under Section 2D1.1(b)(1) is Inapplicable

Counsel for Mr. Stevenson expects the government to seek a two-level increase in Mr. Stevenson's base offense level based on the presence of two firearms in his home when he was arrested.  See U.S.S.G. §2D1.1(b)(1).  To obtain the enhancement, government counsel must prove that Mr. Stevenson possessed one of the firearms recovered from his home in connection with the marijuana plants.  They cannot meet this burden because Mr. Stevenson did not possess either weapon, at any time, including time when he cultivated marijuana, and the government has absolutely no proof that he did.  Furthermore, the weapons had nothing to do with the marijuana plants that were in the basement.

The police recovered a .25 caliber pistol from the top shelf of a closet in the master bedroom of Mr. Stevenson's house.  See Attachment 2 (photo of closet shelf where the .25 caliber pistol was recovered).  Mr. Stevenson lives in a three-level house.  The bottom floor is the basement, where Mr. Stevenson was growing marijuana.  Above the basement is the first floor, which contains the living room and kitchen.  Above the first floor is the top floor, where the master bedroom is located.  The shelf where the .25 caliber pistol was found is separated from the basement by the stairwell that leads from the basement to the first floor, as well as the first floor itself, and the stairwell that leads to the top floor.  Furthermore, Mr. Stevenson kept the only interior door that leads to the basement locked from the inside whenever his children were

7

home.  See Attachment 3 (photos showing latch on basement side of the door that leads to the basement).  Because the .25 caliber pistol was not recovered anywhere near the marijuana that was being grown in the basement, there is nothing about that gun's presence in the house that demonstrates that it was connected to the marijuana plants in the basement.

The .25 caliber pistol belonged to Mr. Stevenson's wife.  She had the pistol for protection when she lived alone before she met Mr. Stevenson.  When they moved into their house together, she brought the pistol with her and kept it there.  Mr. Stevenson's wife had the gun before she met Mr. Stevenson, and long before he ever started growing marijuana.  Mr. Stevenson never carried or possessed the gun.  As part of Mr. Stevenson's plea agreement, the government has agreed not to prosecute his wife.

The police also recovered a .9mm handgun from Mr. Stevenson's attic.  The attic is accessible only through a covered opening in the ceiling of a hallway on the top floor of his house.  See Attachment 4 (photos showing entrance to attic).  The entrance to the attic is almost nine feet from the floor and is not accessible from the floor without standing on a chair or some other object.  After standing on a chair, the wooden piece that covers the opening to the attic has to be pushed up and slid to the inside of the attic.  Only then can someone reach up and into the attic.  This gun was totally inaccessible from the basement of the house.  Just like the .25 caliber pistol, there is nothing about the gun's location that links it to the marijuana plants in the basement.  If anything, the distance of the guns from the basement clearly demonstrates that they guns were not connected with the marijuana plants.

The 9mm handgun that was found in the attic belonged to a friend of Mr. Stevenson's brother.  That person, along with Mr. Stevenson's brother, came to Mr. Stevenson's home sometime during the weeks prior to Mr. Stevenson's arrest and asked if they could leave the gun

8

in his house while they went out to ride motorcycles. The men, who ride motorcycles at high speeds and do tricks while riding, did not want to have the gun with them because they felt that they may encounter the police while riding the motorcycles. The friend of Mr. Stevenson's brother had not yet retrieved the gun when the police found it in Mr. Stevenson's attic. Mr. Stevenson never possessed this gun and it had absolutely nothing to do with the marijuana plants..

To obtain the two-level enhancement under section 2D1.1(b)(1), the government must prove that Mr. Stevenson possessed a firearm in connection with the offense. They cannot meet this burden because they have absolutely no evidence that Mr. Stevenson ever possessed the guns or that the guns were in any way connected to the marijuana that he grew in his basement. They have no witness that says that Mr. Stevenson ever possessed either gun, and no evidence, such as fingerprints, that proves that he ever touched the firearms. Furthermore, the guns were not in close proximity to the basement and there is no evidence that they were linked to the marijuana plants. There is simply no proof that Mr. Stevenson possessed either weapon in connection with the marijuana plants, and no proof that he possessed them at all.

    b.  <u>Mr. Stevenson is Eligible for Safety Valve Treatment Under Section 5C1.2</u>

Mr. Stevenson meets all five of the requirements for safety valve treatment under section 5C1.2 of the guidelines. Defense counsel expects the government to agree that Mr. Stevenson meets element (1) and elements (3)-(5) but to argue that he "possessed a firearm [] in connection with the offense" and, therefore, does not satisfy element (2). U.S.S.G. §5C1.2(a)(2). As explained above, Mr. Stevenson did not possess either firearm, and the government has no evidence to the contrary.

Immediately following the entry of Mr. Stevenson's guilty plea, the government stated it may seek to call a witness at Mr. Stevenson's sentencing hearing to testify in support of the government's request for the two-level increase under section 2D1.1. Defense counsel has a good faith basis to believe that the witness would be one of the agents that searched and recovered evidence from Mr. Stevenson's home. The agent would testify about the locations of the contraband in the house. Counsel for Mr. Stevenson contends that the agreed upon facts clearly demonstrate the two-level enhancement to be inapplicable here. The facts also establish Mr. Stevenson's eligibility for safety valve treatment under section 5C1.2. The agent will offer no evidence that links Mr. Stevenson to either firearm or that links either firearm to the marijuana that Mr. Stevenson grew in his basement. Consequently, there is no need for the testimony that the government seeks to offer at the sentencing hearing. Should the Court allow the government to offer testimony, defense counsel is prepared to present the testimony of two witnesses in support of Mr. Stevenson's position.

## V.  Conclusion: Mr. Stevenson's Requested Sentence

Counsel for Mr. Stevenson, for the reasons stated in this memorandum, contends that Mr. Stevenson's exposure under the guidelines is 24 to 30 months of incarceration and requests that Mr. Stevenson be sentenced to a term of not more than 24 months.  Mr. Stevenson requests that the Court recommend that he receive drug treatment while incarcerated and that he be allowed to report to the facility where he will serve his time rather than being detained at his sentencing hearing.

**Dated: August 18, 2006**                    Respectfully submitted,


                                              /s/
                                              Michael Starr (Bar No. 461-773)
                                              On Behalf of Mr. Domingo Stevenson
                                              Schertler & Onorato, L.L.P.
                                              601 Pennsylvania Ave., N.W.
                                              North Building, Ninth Floor
                                              Washington, D.C. 20004
                                              Telephone:  (202) 628-4199
                                              Facsimile:  (202) 628-4177